**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY HALL, | ) | CASE NO. 5:13-CV-575 |
| | ) | |
| Plaintiff, | ) | JUDGE GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | | |

Plaintiff, Timothy Hall ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

On May 19, 2010, Plaintiff filed applications for DIB and Supplemental Security Income ("SSI") benefits, alleging a disability onset date of October 3, 2001. (Tr. 11.) Plaintiff was found to be disabled as of May 2010, and, in October 2010, the Agency granted his application for SSI benefits. (Tr. 104.) However, because Plaintiff's date last insured – December 2006 – predated his disability onset date, the Agency denied

his application for DIB. (Tr. 11.) Plaintiff's application for DIB was denied on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). (*Id*.) On January 20, 2012, an ALJ conducted an administrative hearing, at which Plaintiff was represented by counsel and testified. (*Id*.) A vocational expert ("VE") also testified. (*Id*.) On January 27, 2012, the ALJ determined that, from the alleged onset date of October 31, 2001 through his date last insured of December 2006, Plaintiff was not disabled. (Tr. 20.) On February 19, 2013, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. 1.)

On March 18, 2013, Plaintiff filed his Complaint challenging the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. Nos. 13, 14.) Plaintiff asserts that the ALJ erred in: (1) failing to properly evaluate Plaintiff's obesity; and (2) rejecting the opinion of Plaintiff's treating physician. The Commissioner responds that the ALJ did not err and that substantial evidence supports the ALJ's decision to assign less than controlling weight to the opinion of Plaintiff's treating physician.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born on October 28, 1959. (Tr. 19.) He completed high school and had past relevant work as a burning machine operator. (*Id.*)

### B. Medical Evidence

#### 1. Plaintiff's Providers

A January 3, 2000 x-ray of Plaintiff's left knee revealed degenerative arthritis with two loose bodies and effusion. (Tr. 444.) Scans performed on June 24, 2001 – after Plaintiff fell at work – revealed mild arthritic changes in both knees. (Tr. 448.)

On March 6, 2005, Plaintiff reported to the emergency department at Southeastern Ohio Regional Medical Center ("SORMC"), complaining of pain in his left ankle after falling down a hill. (Tr. 247.) Imaging revealed a bimalleolar fracture of his left ankle. (*Id.*) Plaintiff underwent an open reduction and internal fixation of the left ankle on March 15, 2005, and was discharged on March 16, 2005, after undergoing crutch training. (Tr. 245.) A March 15, 2005 cardiopulmonary consultation report noted that Plaintiff was morbidly obese, with hypertension. (Tr. 249.) Scans performed on May 5, 2005 revealed posttraumatic and degenerative changes in Plaintiff's left ankle, with no definitive evidence of osteomyelitis. (Tr. 243-44.)

On October 28, 2005, family physician Debra Miller, M.D., examined Plaintiff, and noted his height as five feet, ten inches and his weight as 380 and 1/2 pounds. (Tr. 378.) She noted that he had malignant hypertension and ankle pain, and prescribed blood pressure and pain medications. (*Id.*) On November 7, 2005, Dr. Miller noted that

she had engaged in a "lengthy discussion about obesity" with Plaintiff, and recommended a 1000 calorie/day diet, noting that Plaintiff was "not active." (Tr. 377.) On December 13, 2005, Dr. Miller noted that Plaintiff's weight was 365 pounds, and diagnosed him with hypertension and obesity. (Tr. 375.) On January 4, 2006, Plaintiff weighed 354 pounds. (Tr. 374.) He complained of pain in his left knee, and Dr. Miller noted crepitus in both knees. (*Id*.) Dr. Miller diagnosed Plaintiff with "severe" bilateral arthritis in both knees, and prescribed Darvocet. (*Id*.) She opined that, when Plaintiff lost sufficient weight, she would send him to physical therapy. (*Id*.)

On April 12, 2006, Dr. Miller noted edema and an ulcer on Plaintiff's lower left leg. (Tr. 272.) Plaintiff weighed 354 pounds and indicated that he wanted to undergo gastric bypass surgery. (*Id*.) On May 1, 2006, Plaintiff's leg ulcer had not resolved. (Tr. 370.) Dr. Miller noted that he was "morbidly obese," and described his weight as "350+" pounds. (*Id*.)

On July 5, 2006, Plaintiff complained to Dr. Miller of pain after twisting his right knee. (Tr. 368.) She diagnosed him with a knee sprain and prescribed a pain medication. (*Id*.) Plaintiff's weight continued to be greater than 350 pounds. (*Id*.) On July 19, 2006, Plaintiff complained of pain in his joints. (Tr. 367.) On July 31, 2006, Plaintiff complained of pain in his right toes after attempting to work for four days. (Tr. 366.) Dr. Miller noted swelling of Plaintiff's toes and diagnosed him with gout. (*Id*.) On August 21, 2006, Plaintiff reported that the pain in his toe had improved but was "still bad" and that he working and "feeling better." (Tr. 365.) His weight was greater than 350 pounds. (*Id*.) Dr. Miller prescribed a course of Prednisone. (*Id*.) Scans

4

performed on August 23, 2006, revealed a prominent heel spur in Plaintiff's right foot, as well as moderate arthritis in Plaintiff's knees .  (Tr. 291-92.)

On September 5, 2006, Plaintiff reported that the Prednisone had made "all his joints feel great," and that he "hadn't felt this good in 20 years."  (Tr. 364.)  Dr. Miller diagnosed Plaintiff with moderate to severe arthritis in his knees and referred him to an arthritis clinic.  (*Id*.)  On September 26, 2006, Plaintiff reported that he was experiencing pain in his feet and left knee, which had improved while he was taking Prednisone.  (Tr. 363.) He weighed greater than 350 pounds.  (*Id*.)  Dr. Miller prescribed another course of Prednisone.  (*Id*.)

On October 9, 2006, Plaintiff reported that his pain had resolved on the Prednisone, and that he had no noticeable symptoms from the medication.  (Tr. 362.) He reported that he was able to function and be active.  (*Id*.)  His weight continued to be greater than 350 pounds.  (*Id*.)

On December 1, 2011, Dr. Miller completed a medical opinion questionnaire. (Tr. 497-99.)  The questionnaire requested that Dr. Miller consider how Plaintiff's "physical capabilities *are* affected" by his impairments.  (Tr. 497 (emphasis added).)  Dr. Miller opined that Plaintiff could: lift 20 pounds occasionally and 10 pounds frequently; stand and walk for less than two hours in an eight-hour day; and sit for four hours in an eight-hour day. (Tr. 497.)  She stated that Plaintiff could sit for 20 or 30 minutes and stand for 10 minutes before changing positions, and that he would need to walk around for 20 minutes every 20 minutes during the work day.  (Tr. 497-98.)  She opined that Plaintiff would be required to shift from sitting to standing or walking and would need to

5

lie down at unpredictable intervals 12 times each day. (Tr. 498.) Finally, Dr. Miller concluded that Plaintiff could occasionally twist and climb stairs, but could never stoop, crouch or climb ladders. (*Id*.)

### 2. Agency Reports and Assessments

On August 16, 2010, consulting physician Judith Brown, M.D., examined Plaintiff. (Tr. 452–56.) She noted Plaintiff's report that, since 2001, his knees would occasionally give out without warning. (Tr. 452.) She described Plaintiff as morbidly obese, and ambulating with a waddling gait that was not unsteady, lurching or unpredictable. (Tr. 454.) She diagnosed Plaintiff with chronic bilateral knee pain, secondary to morbid obesity and arthritis, and chronic left ankle pain. (Tr. 456.) She opined that his ability to perform work-related activities "appears to be at least mildly impaired." (*Id*.)

On September 13, 2010, agency consulting physician W. Jerry McCloud, M.D., performed an RFC assessment for the period prior to December 31, 2006. (Tr. 59-61.) He determined that Plaintiff could: lift 50 pounds occasionally and 25 pounds frequently; sit, stand and/or walk for six hours in an eight-hour workday with normal breaks; frequently push or pull with his right arm; occasionally push or pull with his left leg; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance, stoop, kneel and crouch; and occasionally crawl. (Tr. 60-61.) He opined that Plaintiff should avoid all hazards, open machinery, unprotected heights, and commercial driving. (Tr. 61.)

On November 19, 2010, consulting physician Leanne M. Bertani, M.D., performed an RFC assessment for the period prior to December 31, 2006. (Tr. 84-86.) She concluded that Plaintiff was capable of: lifting 20 pounds occasionally and 10

6

pounds frequently; standing and/or walking for four hours in an eight-hour day; sitting for about six hours in an eight-hour workday; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; and never climbing ladders, ropes or scaffolds.  (Tr. 84-85.)  Dr. Bertani opined that Plaintiff should avoid exposure to unprotected heights.  (Tr. 86.)

**C.     Hearing Testimony**

**1.  Plaintiff's Testimony**

At his January 20, 2012 administrative hearing, Plaintiff testified as follows:

During the relevant time period, he was unable to work because his knees hurt and he was not able to put weight on them.  (Tr. 37.)  His gout caused him extreme pain in his extremities.  (Tr. 38.)  On a typical day, Plaintiff had to "get on the floor and actually exercise [his] joints so [he] can actually move."  (Tr. 41.)

**2.  VE Testimony**

The ALJ described the following hypothetical individual of Plaintiff's age, education and work history, with the following limitations:

> [C]an perform light work but can never climb ladders, ropes
> or scaffolds and only occasionally climb ramps or stairs.
> Assume this person can occasionally balance, stoop, kneel,
> crouch or crawl.  Assume this person must avoid all
> exposure to dangerous machinery and unprotected heights.

(Tr. 46-47.)

The VE opined that the hypothetical individual could not perform Plaintiff's past work as a burning machine operator.  (Tr. 47.)  The VE testified that the hypothetical individual would be able to perform work as a housekeeping cleaner, cashier II or fast

7

food worker. (*Id.*) During examination by Plaintiff's counsel, the VE opined that an individual with the limitations described in Dr. Miller's December 2011 questionnaire would not be able to perform any work. (Tr. 49-50.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a

severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

In his January 27, 2012 decision, the ALJ noted that his decision applied only to Plaintiff's application for DIB, and that the relevant period of time was from the alleged onset date of October 31, 2001 through the date last insured of December 2006.  (Tr. 11.)  The ALJ made the following findings of fact and conclusions of law:

1. Plaintiff last met the insured status requirements of the Act on December 31, 2006.

2. Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of October 31, 2001 through his date last insured of December 31, 2006.

3. Through the date last insured, Plaintiff had the following severe impairments: hypertension, morbid obesity, degenerative joint disease of both knees, distal left tibial/fibular fracture status post open reduction internal fixation, and gout.

4. Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Through the date last insured, Plaintiff had the residual functional capacity

9

     ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that Plaintiff could not climb ladders, ropes or scaffolds and could only occasionally climb ramps and stairs.  He could occasionally balance, stoop, crouch or crawl. Plaintiff had to avoid all exposure to hazards such as dangerous machines and unprotected heights.

6. Through the date last insured, Plaintiff was unable to perform any past relevant work.

7. Plaintiff was born on October 28, 1959 and was 47 years old, which is defined as a younger individual age 18-49, on the date last insured.

8. Plaintiff has at least a high school education and is able to communicate in English.

\* \* \*

10. Through the date last insured, considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

11. Plaintiff was not under a disability, as defined in the Act, at any time from October 31, 2001, the alleged onset date, through December 31, 2006, the date last insured.

(Tr. 13-20.)

## V.  LAW & ANALYSIS

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court

does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Arguments

Plaintiff argues that the ALJ erred in failing to: (1) properly evaluate Plaintiff's obesity; and (2) assign controlling weight to Dr. Miller's opinion.

#### 1. Plaintiff's Obesity

Plaintiff argues that the ALJ violated Social Security Ruling 02-1p by failing to specifically address the contributing impact of obesity on Plaintiff's RFC. The Commissioner disputes this.

The Social Security Administration ("SSA") considers obesity to be a medically determinable impairment. S.S.R. 02-1p, Introduction, 2000 WL 628049, at *1 (S.S.A.). Although the Listings previously included obesity as an impairment, the SSA deleted it in 1999, and added paragraphs to the prefaces of the musculoskeletal, respiratory, and

cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. *Id.* The SSA also recognizes that obesity may cause or contribute to mental impairments such as depression or the loss of mental clarity due to obesity-related sleep apnea. S.S.R. 02-1p, Policy Interpretation Question 2, 2000 WL 628049, at *3.

Plaintiff argues that the ALJ erred by failing to specifically discuss how Plaintiff's obesity impacted the ALJ's determination of Plaintiff's RFC. But the ruling does not mandate a particular mode of analysis of obesity, as it states only that obesity, in combination with other impairments, "may" increase the severity of the other limitations. *Id*. Further, the ruling does not require the ALJ to engage in any specific form of analysis with respect to a claimant's obesity. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006) ("It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants."). In this case, the ALJ's decision reflects that the ALJ considered Plaintiff's obesity and its effect on his ability to function. In addition to determining that Plaintiff's obesity constituted a severe impairment, the ALJ specifically described how obesity may have affected Plaintiff's ability to work:

> In reaching the conclusion that [Plaintiff's] impairments do not rise to the listing level, I considered the effect his obesity has on his other impairments and on his ability to perform routine movement and necessary physical activity within the work environment. I also considered how his obesity might cause fatigue that would his affect his ability to function physically pursuant to Social Security Ruling 02-1p. I have incorporated the exacerbating effects of [Plaintiff's] obesity in the [RFC] and I do not find that [Plaintiff's] obesity either singularly or in combination with his other medically determinable impairments results in limitations greater than

12

those assessed in this opinion.

(Tr. 15.)

Plaintiff contends that this Court's ruling in *Norman v. Astrue*, 694 F. Supp. 2d 738 (N.D. Ohio 2010) (O'Malley, J.), requires remand in this case.  In *Norman*, this Court reversed the Commissioner's decision and remanded the case to the ALJ to properly evaluate the claimant's obesity under S.S.R. 02-1p.  In that case, however, the ALJ's opinion contained "no discussion of the effect of Norman's weight on his RFC." 694 F. Supp. 2d at 749, n.5.  That error was magnified by the fact that the ALJ "either discounted or discredited [the claimant's] back pain allegations because he is obese, rather than evaluate whether his obesity exacerbates his back problems." *Id.* at 749. This case is distinguishable from *Norman*.  In this case, the ALJ complied with the ruling by acknowledging that Plaintiff's obesity likely affected his RFC, and then discussing how the ALJ had accounted for Plaintiff's weight and its related restrictions in determining Plaintiff's RFC.  Neither the ruling nor any other legal authority requires the ALJ to engage in any further analysis of this issue.  Accordingly, this argument lacks merit.

### 2. Dr. Miller's Opinion

In his decision, the ALJ assigned little weight to Dr. Miller's December 2011 opinion regarding Plaintiff's ability to work:

> I give little weight to Dr. Miller's opinion as it applies to the relevant period.  Dr. Miller's assessment was nearly five years after the date last insured, so it is likely that she was considering [Plaintiff's] current restrictions, rather than his limitations from five years ago.  Indeed, the evidence of record, including Dr. Miller's treatment notes, does not

13

>suggest such an extreme degree of restrictions prior to the date last insured. [Plaintiff's] symptoms generally waxed and waned, and he had substantial improvement of his symptoms with medication during such period.

(Tr. 18.)

There is no dispute that Dr. Miller was Plaintiff's treating physician. An ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). Conversely, a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).

Here, Plaintiff argues that the ALJ's error in this context is two-fold. First, he contends that the ALJ's decision is "unclear" with respect to the amount of weight he assigned to Dr. Miller's opinion, and that "[a]ll that is clear from the ALJ's analysis is that he did not give it significant weight, and, by implication, he did not give it controlling weight." (Plaintiff's Brief at 15.) Second, he argues that substantial evidence does not support the ALJ's reasons for declining to give Dr. Miller's opinion controlling weight.

14

Plaintiff's first point is patently incorrect.  The ALJ's decision specifically stated that he had assigned "little weight" to Dr. Miller's opinion.  Accordingly, it is clear that the ALJ did not treat Dr. Miller's opinion as controlling, and that he assigned it a specific degree of weight: "little."  Further, to the extent that Plaintiff contends that the ALJ should have been more specific or provided greater description of the weight he assigned to Dr. Miller's opinion, Plaintiff fails either to refer to legal authority requiring more information, or to explain how he was prejudiced by this failure.

Plaintiff's second argument also lacks merit, as substantial evidence supports the ALJ's reasons for declining to give Dr. Miller's opinion controlling weight.  The record reflects that Dr. Miller completed her questionnaire in December 2011 – some five years after the relevant period in this case.  Nothing on the questionnaire requested that she opine on Plaintiff's condition for any specific period of time.  Rather, the instructions on the form used the present tense to describe the relevant scope of the doctor's opinion, as the form instructed her to discuss how Plaintiff's "physical capabilities *are* affected" by his impairments.  (Tr. 497 (emphasis added).)  No other evidence suggests that Dr. Miller was opining with respect to a period of time that had ended five years before.  Accordingly, the record supports the ALJ's reasoning that Dr. Miller likely considered Plaintiff's condition as of the date on which she completed the form.

Further, the record supports the ALJ's conclusion that Dr. Miller's December 2011 opinion regarding Plaintiff's capabilities was inconsistent with her treatment notes from the relevant period.  Although Plaintiff complained of knee and joint pain, as well as gout and arthritis, prior to and through December 2006, Dr. Miller's treatment notes

15

do not reflect that he was as limited as she described in December 2011.  Rather, after receiving a course of Prednisone, Plaintiff described his symptoms as nearly resolved, and indicated that he felt better than he had in 20 years.  The records from that period of time reflect that Plaintiff only intermittently complained of lower leg and joint pain.  Further, Plaintiff had "very little treatment or complaints for his impairments throughout the early portion of the alleged period of disability," and when he began treatment "in earnest' in 2005, it was generally conservative.  (Tr. 18.)  Accordingly, substantial evidence supports the ALJ's reasons for assigning less than controlling weight to Dr. Miller's opinion, and this argument presents no basis for remand in this case.

## VI.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

                        s/ *Nancy A. Vecchiarelli*
                        U.S. Magistrate Judge

Date: November 1, 2013

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**